May it please the Court, H.P. believes that this case is one that sits squarely within the rule that the Court articulated in the Sandisk decision. Wow, squarely? Squarely. Squarely. Squarely. Wow, this is a compelling, compelling case. Do you think maybe you'd have been a little better off starting with this is a closed case but we win? Well, we think the rule articulated in Sandisk as stated by the Court is that where a patentee asserts rights under a patent based on certain ongoing identified activity of a party that there is then declaratory judgment jurisdiction if the party contends that it has the right to engage in that activity without a license. And that was the rule articulated in Sandisk and Sandisk stated that it wasn't reaching the far boundaries of declaratory judgment jurisdiction. Did the lower court made effect finding no charge of infringement was made by these letters? Well, what we have though is that first of all I don't believe that the Sandisk court articulated a requirement that there be on top of an identification of a patent and an identification of ongoing planned activity of a party. I don't believe it made a requirement for an express charge of infringement and in fact the court's authority prior to Sandisk and prior to MedImmune indicated that an implied charge would be something that could create a reasonable apprehension of suit under the old standard. But in this case the district court said there's no charge of infringement. Doesn't that subsume both express and implied? That's effect finding. So we'd review that for clear error. It is a fact finding but we don't believe that the rule is that an express charge of infringement is required in order to create declaratory judgment. You just said it would be an implied charge and the district court as I interpret their opinion says neither. Well, I think that the court did find that Mr. Ramey did sufficiently identify the product line of HP that was at issue and that was a court finding that we defer to. And obviously there's no dispute that the patent at issue has been identified. That's clearly right. But the tenor of the letter is let's have a discussion. Why isn't that pretty important? If the tenor of the letter had been we think you infringe, this might be a very different case.  And that is that in the very first letter that Mr. Ramey, we don't believe it's a jurisdictionally distinct step but let me address what that first step was, which was in his very first letter to Hewlett Packard, Mr. Ramey asked that Hewlett Packard give up its right to bring a declaratory judgment action in return for receiving a package of information about the patent in suit. I think that it is fair to conclude from that that the concern on the part of Acceleron was that that packet of information, if conveyed to Hewlett Packard, would give Hewlett Packard a basis for filing a declaratory judgment suit. I.e., Mr. Ramey was about to tell Hewlett Packard that it thought, as in fact he later asserted, that Hewlett Packard was infringing his patent. In that circumstance, he is one step away from making a charge of infringement. Because he hasn't made it. But he has indicated that he thinks that he will be saying something to Hewlett Packard that gives rise to declaratory judgment jurisdiction. Well, of course. Every licensing negotiation involves that. Every single one. Once you get behind the closed doors, what are you going to say? Acceleron is going to say to you, HP, we don't think you infringe, but we still think you should pay us money. No, of course not. Of course there is going to be a discussion of the product and how much it costs and all of that. And once you suggest that you're going down the path of that discussion, as opposed to a discussion of, for example, we think you might like to buy the patent, or we think we'd like to do a product development effort with you, once you go down the road of, we're going to have a discussion of infringement, there is a concrete dispute between the parties. That rule would have it be that every single licensing letter automatically instills DJ jurisdiction. That can't possibly be the rule. That every time a patentee sends a licensing letter, here is a patent that we just got, let us know if you're interested in licensing. That that would automatically, because it's the first step down a road that might ultimately result in charges of infringement, it can't possibly be the step to take. And we're not arguing that that is the rule. You just said, except for letters when they're trying to assign or purchase patents or enter a product development agreement. Those were the only two exceptions you just carved out. Well, in the hypothetical that the court posed, the letter did not identify any particular business activity that was of interest. All that letter would say is a letter, like many licensing letters are that companies receive, that say we have a terrific patent and we think you might be interested in licensing it, but don't say that it is, quote, relevant to a specific ongoing activity of the target entity. In this instance, Mr. Ramey said in his second letter that he wanted to discuss the, quote, relevance of the 021 patent to your blade server products. So you think that the trigger should be for DJ jurisdiction, any time there's a licensing letter that identifies any specific product, even though it hasn't made allegations of infringement, just the identification of a specific product should be it. Because our cases have definitely not held that thus far. This would be pushing us quite a bit further than we've gone with our existing jurisdiction. I don't think there's anything that would prevent us from saying that. But that's exactly the rule you're asking for. I just want to make sure I understand. Yes, that is the rule. And we thought that the language in Sandisk, where the court said, where a patentee asserts rights under a patent based on specific ongoing or planned activity of the defendant, that that gave rise to declaratory judgment jurisdiction was that rule. And that the additional fact search of patent rights, namely, I think you infringe, as opposed to, hey, are you interested in taking a license on your lawnmowers? I happen to have a lawnmower patent. But there is the distinction that Mr. Ramey indicated that he wanted to discuss the, quote, relevance of the 021 patent to specific HP products, the blade server products. And he wouldn't be wanting to discuss the relevance of it unless he thought that there was infringement. And he wouldn't be proposing that we write our declaratory judgment rights. Why couldn't he have thought that he couldn't tell because he didn't have enough information? He subsequently filed suit without getting any additional information from Hewlett Packard. So the fact that he said- Without getting additional information, but maybe during that time, he spent time to look at what he already had much more closely, especially after you all sued him. I mean, he may not have gotten more information, but maybe he actually then did the analysis that was necessary to reach the conclusion he did. So the district court did not, in response to the court's points, the district court did not give weight to Mr. Ramey's statement that he didn't think there was infringement or he didn't know if there was infringement. He didn't say he didn't think there was infringement. He said he did not know. And as a non-patent attorney CEO of a holding company, his statement is that he's not conducted the complex legal analysis necessary to decide that there has been patent infringement. But that doesn't change the fact that he, in his correspondence as a district court found, identified the specific HP conduct that was at issue. We know what the two letters say. There's no point in going over and over and over the content of the two letters. They say what they say. They're in the record. We know what they say. The only question is, do they say enough or do they fall a little bit short? That's not a question of what they say. It's a question of what they don't then go on to say. Right. And they come up close to the line. They come up and say, we think this patent is relevant. And they come up and say, in order to talk to you further, we need an agreement that you won't sue us for declaratory judgment jurisdiction, indicating that the next communication is going to be something that clearly states there is infringement. If the code word, we think this is relevant to your products, is not enough for HP to conclude that. Here's the problem. I guess as a policy matter, HP's a big company, and they make a zillion different kinds of products. I mean, if patentees were just sending you letters that said, here's a patent, take a look, that wouldn't be nearly as helpful to you as a company as, here's a patent, it pertains to blade servers. You know, it's relevant to your blade servers. I mean, as a big company, if you're a little company, you made one product, then maybe a patent that comes to you that says, here, this might be relevant to your products, you know, would be sufficient. But I would think, I don't see a reason to discourage patentees from necessarily identifying a line of products without accusing them of infringement. So I want you to tell me why we should draw the line there. So I think that the distinction here is that the request that we not file a declaratory judgment action makes this case different than the standard licensing offer. Because oftentimes, a letter will come in, it will suggest a non-disclosure agreement along the lines of what the Sandus Court outlined, the parties will conduct a discussion and discuss the issue. And obviously, that's something we want to have happen, and not too many lawsuits being filed. But the demand to waive declaratory judgment jurisdiction means that this is on the other side of that line. So you're not asking for that really broad rule, I'm sorry, go ahead. Well, we know those letters are very carefully drafted. They were very carefully drafted well before MedImmune. And I think it's fair to say that everybody knew what was going on. The patent was identified, the product was identified. The resistance to an agreement not to file an action was very clear. Whether or not such letters would nonetheless have avoided declaratory jurisdiction before MedImmune is itself, I think, an interesting question on these particular facts. But what I'd like to hear your comments on is the extent, we know that MedImmune changed the rules. The extent to which it may have changed the rules for this kind of, again, carefully drafted letter that might previously, there's a different kind of fact than what arose in MedImmune. Well, I think that in MedImmune, the Supreme Court in footnote 11 cited two cases. They were insurance cases. And in each of those cases, there was knowledge that there was a conflict of interests, as it were, between a carrier and an insured, where they had different interests. But in neither of those instances did the Supreme Court say that there was no declaratory judgment jurisdiction because the insured had not threatened suit. And in one instance, it held that there was declaratory judgment jurisdiction, even though the underlying litigation had not yet been disposed of. And there was no guarantee that the insured would be making a claim. All right. And therefore, we understand the principle and the policy behind that decision. But should that principle and policy to facilitate challenge to a patent, when you know that there is a dispute looming, should that be enlarged to this kind of charade, whatever you want to call it? This has been going on for years. It didn't change. It's not a recent kind of approach. I think that the change after MedImmune is to stop focusing on reasonable apprehension of suit. And the focus on was there a charge of infringement is, are they going to sue the next day? And so I think that if we are to back away from reasonable apprehension of suit as the only way to satisfy the standard, then we shouldn't be analyzing it in terms of had they concluded that they were going to file suit. It is, had they identified the patent? Had they identified the activity? Has there been a dispute crystallized such that the court would be ruling not on a hypothetical case, but on an actual dispute when it takes up jurisdiction? With regard to this, there's also an alternate issue here, which is whether the district court should have considered the additional evidence in the record that arose after the time of filing of the original complaint. And I think it's fair to say that even Acceleron has had to agree that the Supreme Court decision in Matthews versus Diaz, and this court's decision in Black, indicate that where there is evidence in the record that would support a supplemental pleading that would cure an alleged jurisdictional defect, that that should be considered by the fact finder. How can it cure the defect? Because the question is, when the DJ action was filed, was there a basis for it? And what... So how is that changed by something that happens later? So what each of those... I don't see how it possibly can change the ripeness of the dispute as of the filing date of the DJ action, because later there was an infringement suit. So essentially what those two cases did was say that the clock was restarted at the time that an amended pleading could have been made with that additional information in it, and then jurisdiction was determined at that later point with that additional information in the record. And so, for example... But the only way to get the additional information, namely they sued you, is after they sue you first filed, over and done with. You don't get your DJ. They already filed. That actually wasn't the only indication in the record. The other indication in the record that we submitted to the court were the stipulations that the parties filed with the district court while the motion to dismiss was pending, indicating that they were conferring to try to resolve their dispute, and ultimately that they were unable to settle their dispute. That was well prior to the filing of the Texas action, and it was in front of the district court at the time that it ruled on the motion to dismiss, but the district court thought that it couldn't look at that material because of the timing rule. And we would submit that Matthews and Black indicate that where there's information like that in the record, it was in the form of a stipulation between the parties, that that information should be considered by the district court in determining whether there was jurisdiction. I thought in Matthews that the supplemental pleading corrected a misstatement of the original pleadings. So it had to do with the fact that existed way back at the time of the original file. No, Your Honor, it was after the plaintiff filed the lawsuit in Matthews, the plaintiff then went back and exhausted her administrative remedies by applying for Medicare and being turned down. And so the facts that were considered in the supplemental affidavit in Matthews were facts that occurred after the time of the original filing, but cured a jurisdictional defect. And the view of the court was that the district court should have permitted amendment or otherwise considered that information and looked at whether jurisdiction existed at the time of that supplemental information, akin to a supplemental complaint. And the Black court was similar. This court applied Matthews and held that a special master should have considered a supplemental affidavit that showed that after the original filing, the jurisdictional minimum had been met. You realize that this district court judge has, of course, the discretion, even if we say that she was wrong to decline to exercise that discretion over the DJ. And given the presence of this big, fat suit in Texas, what's the point of all this? The point of all of this here is, one, to set the rule for declaratory judgment cases so that we know when we can file and can't file in these licensing circumstances. And the other point of the rule is to go back to her and have her conduct the analysis on whether she should continue with the first filed action or go with an action that was filed a year later in Texas in which not a lot of activity has yet occurred. And that is going to be a matter for her to consider in the exercise of her jurisdiction and considering all the various factors that the court has outlined for her. But we do think that she should be given the opportunity to do that. What's the difference other than the forum? Well, in this instance, both of the parties are incorporated in Delaware, and we thought that the state with What difference does that make? Thousands of corporations in the United States are incorporated in Delaware but never set foot in Delaware. Their facilities are in California or Montana or who knows where. But each corporate entity decided that those were the laws that it wanted to operate under. Both agreed that Delaware was appropriate forum for conduct of their corporate activities. And we do believe that Delaware has a certain interest in resolving a dispute between two Delaware corporations. Obviously, the district courts and chancery courts in Delaware have a plethora of that litigation. And so we think that this was No one is suggesting that the infringement suit couldn't have been filed in Delaware or probably any other district or state in the whole country. So the real underlying competition here is who gets to choose the forum, not which is the more logical forum. Well, ultimately, the district court will determine which is the correct forum based on the further analysis that Judge Morris indicated the court will be doing on a remand. But we do believe the court should be permitted to make that determination. She thought that she couldn't because the case was not yet ripe for disposition. So it sounds like going backwards instead of forwards. Remand, new analysis, new decision, decide which court. Just out of curiosity, in Matthews, the party actually filed a supplemental pleading to amend its complaint. But HP didn't do that here. Did you? I mean, am I missing something in the record? In Matthews, there was an affidavit and stipulation in the record that the appellate court considered. And then the appellate court said that either amendment could be permitted either on appeal or on remand and recommended that it be considered on remand. So we have a similar set of circumstances here. I'm confused. Explain that again, because I thought there was a supplemental pleading in Matthews and wasn't that made at the. There was no supplemental complaint on file in Matthews at the time that the Supreme Court issued its decision. What was in the pleadings record was a affidavit and a stipulation that the plaintiff had exhausted her administrative remedies. And what the court in Matthews said was that amendment could be made either on appeal or on remand to provide a supplemental pleading and remanded to have that done. In this instance, we didn't try to amend because of the Third Circuit law indicating the court could consider all of the circumstances relevant to the declaratory judgment issue, whether or not they were raised in the pleadings. But we think that and then afterwards, after the court decided that she didn't think this material was relevant, we didn't think that it would be appropriate to then ask for a supplementation. But if you amended, you would lose your status as first filer anyway, right? The amended pleading doesn't take the date of the first file pleading. It takes the date of the supplemental pleading. So it is a supplemental filing to add additional facts. But what the Matthews court was doing was indicating that that was not going to deprive the court of the ability to conduct jurisdiction over the original case. Can you explain to me what it is that Judge Robinson was informed of relating to the negotiations between the parties? Yes, Your Honor. There were a series of stipulations in the record. What had happened was we filed the complaint. Acceleron moved to dismiss. The parties then started talking about whether they could resolve the dispute. And there are a series of stipulations in the record. And the text of those is in the appendix. And those indicate that the parties have been discussing settlement and hope they will be able to resolve their dispute. Or they indicate that the parties have been discussing settlement. And the final one indicates we were unable to resolve our dispute. Is your point that because the word dispute was used in the stipulations, that that establishes that all the requirements implied in MedImmune or any other case were met? Does it use the word dispute? Yes, Your Honor. If there wasn't a dispute between the parties over infringement, we wouldn't have been talking about settlement. We would have dismissed the action. Well, does it say dispute over infringement or does it say dispute over declaratory judgment? It says the parties are conferring in an effort to settle their dispute, which is the overall litigation, not the question of whether the motion to dismiss was proper or not. And you're telling us that the trial judge thought she was not permitted to consider any of those stipulations. Yes, Your Honor. She did. And let me just find the site for the court on that. She did indicate that the stipulations were on file. They're recited on page five of the record. And her ruling on page seven of the record is that the court would not consider post-filing use of the term dispute in determining whether there was jurisdiction. So it was an issue that was before her and she ruled on it. She also had before her the Texas complaint. There was a request that she considered that and she ruled on that at page nine of the record and indicated that she thought she couldn't consider it because it was after the time of filing of the original complaint. All right. Let's hear from Mr. Cook and we'll give you back some rebuttal time. Thank you, Your Honor. Your Honor, may I please the court? This court in Sandisk has interpreted two things for declaratory judgment jurisdiction in the patent context. An assertion of rights by the patentee and adverse positions between the parties at the time of filing. As what? A requirement in all cases or simply as sufficient in a given case? A requirement for all cases. There must be an assertion of rights under the patent. There must be accused activity. And Ms. Morrow points out there was definitely activity that Mr. Ramey pointed to in his letters. He pointed to the blade server products. But he never accused those particular products of infringement. He never identified claims of the patent. He never identified or sent them claim charts. He never even offered a license or suggested a license might be necessary. He just offered an invitation to discuss the 021 patent. And, I mean, the letters are very clear on their face. He could have been wanting to talk to HP about possibly incorporating patented technology from the 021 patent into their blade server products or been looking to see if they wanted to purchase the 021 patent to see if their competitors were infringing and going after their competitors. There was no accused activity in this case, no assertion of infringement. On the other hand, HP also- All that tells us is that the lawyers who drafted the letter are competent. That doesn't really help us make any kind of common sense out of these situations. If you assume that the motivation on the part of every patentee writing a letter regarding the patent is to infringe or enforce its patent rights against the person that they are sending the letter to, that doesn't take into consideration patentees that may just want to open discussions with other companies to see if they might be interested in incorporating that technology into their own or looking to sell the patent rights to a company to bolster their patent portfolio or to protect their competitors from kind of coming in on their turf for their, for example, blade server products. Now, HP also never said they didn't need a license. They never said they didn't infringe the 021 patent. They never said that they thought the 021 patent was invalid or unenforceable. Well, again, it may prove nothing more than the letter writers on both sides know the case law and they can dance around it because they're competent lawyers. That doesn't really help us decide what makes sense in these cases. I think there must at least be an accusation or an accused activity. There has to be an accusation. Because the Supreme Court in Metamunes found that there must be a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Sounds totally circular to me. Well, there must be a substantial controversy. These letters just don't raise a substantial controversy. The only controversy was whether HP would agree to not use the information to file a DJ and whether Acceleron would agree to a covenant not to sue. You're asking us to put on some pretty strong blinders. We've got a company that's in the business of enforcing patents. That's how they make money. It's OK. There's nothing illegal or unappealing about that. But that's what the business model is. We have another company that's the prospective infringement defendant that's making a product that's mentioned in the letters. And to suggest that, well, maybe they just want to do a joint venture or lend some technology is just wildly fictitious. We all know what's really going on. What they're trying to do is get a license without getting sucked into a DJ action. So they word the letter very carefully. But what's really going on is people are doing the dance, moving toward infringement litigation, either in a complaint or a cross-claim. So why shouldn't we look at the reality here instead of who can most cleverly game the system by wording the letter in just the perfectly elusive way? Even if you look at the reality here and what happened, obviously Acceleron did end up suing HP for infringement. Even if you assume that was its intent when it first sent these letters, it's clear from the record Acceleron didn't know whether HP infringed at the time. It doesn't have to know. If it thinks it's likely that there's an infringement, that should be enough. I think if HP had agreed to talk with us and we had some business discussions and there was evidence that they came forward with that they did not infringe, we wouldn't have a rule out in business. Why wouldn't it be better policy to have a clear rule? Maybe let's take Ms. Morrow's suggestion. If I write a letter and I name a specific patent and I name a specific product that the Newman Company is making, the line has been crossed, case is over, DJ jurisdiction exists, period. Why wouldn't that be a better rule? Because otherwise there's no predictability at all. No one ever will know in advance whether the court's going to find jurisdiction or not. I think the line that needs to be is there must be accused activity. If we assume HP's suggested line, if we take the identification of a patent number and the identification of a product, then I can come to you and write a letter saying, you are infringing my patent, period, and that wouldn't suffice because there's no product accused. Now, if I came to you and said, hey, I have a patent, and by the way I really like this product of yours, the green one with this serial number, and be very, very specific about pointing to a particular product, I would submit there's been no accusation of infringement there. It also forecloses the possibility of patentees coming to somebody and saying, you know, I'd like to talk with you about this, maybe you'd like to incorporate it. No, it doesn't. It's very easy to imagine the letter saying, I've got a whole lot of technology, a lot of it's patented, maybe some of it isn't, maybe you'd like to use some of it, we should have a discussion. It's not hard to write that kind of letter. That kind of letter isn't being cut off if we adopt the Morrow Rule. Well, I mean, but there's been no accusation of infringement in that letter. Well, that's true, but that begs the question. Is an explicit accusation of infringement necessary? Should it be necessary to trigger declaratory judgment jurisdiction? Not an explicit accusation of infringement, but there must be some, considering all the circumstances, there must be some accusation of infringement, be it explicit or implicit, like the court held in the Micron case, where I believe it was Mossade that was publishing press releases and making statements to the press and reports in its annual report saying it's going to sue the entire industry. Those are explicit. They're explicit in a general sense. They were not against Micron. There was no explicit threat against Micron, no explicit accusation of infringement there. And so I think in that circumstance, yes, I mean, there's an accusation of infringement. The Supreme Court told us we were wrong with our threat of infringement language, the reasonable apprehension of suit language. I mean, we were wrong. So how in the world does MedImmune not loosen the standards? I think what was wrong was the reasonable apprehension of suit test. We translated quite frequently into threat of infringement. Many of our cases use those words identically, interchangeably. And I understood, but I think the court in Sandisk interpreted MedImmune to require an assertion of rights by the patentee, which is an assertion of rights, a charge of infringement, or at least that something is covered by the patent. That's not present here. We don't have that here. We're outside of even the bounds of that. Well, here's the thing. I read these letters, and I felt threatened. I did. I'd have run to the courthouse, too. Well, the original letter requested that HP enter into an agreement whereby it would agree not to use any information exchange for purposes of litigation and in order to establish an actual case or controversy. What we're trying to do there is propose the confidentiality agreement that was suggested by the majority in Sandisk. The majority and the concurrence critiqued it, but the majority suggested that the suggestion of a confidentiality agreement could prohibit the possibility of a DJ. And that's what we were trying to do with that agreement or with that proposed agreement, that the fact that we didn't call it a, quote, confidentiality agreement, you know, is semantics. What was the package you wanted to send them? To be honest, Your Honor, I'm unaware of what package was prepared at the time. I wasn't representing Celeron at the time, and I've never seen it. If it was a bunch of claim charts, wouldn't that change the circumstance here? Well, I think it has to be an objective rule. I'm not exactly sure what the package was. Well, but, I mean, we've discussed a lot, and you've discussed in your briefs, you know, what the status, I didn't know they infringed, you know, did you think they infringed? You know, that seems to have come up quite a bit in the briefs. Right. Your Honor, I don't believe that it was claim charts. I think it had to do with the prosecution history of the packet, or I'm sorry, the prosecution history of the patent issue. I know for a fact that Mr. Ramey had no knowledge of whether or not HP was infringing at the time he wrote the letter, and so I would suspect that they didn't contain claim charts, but at the same time, even if the packet, you know. When you say you know as a fact that he had no knowledge, where are you getting that? Oh, I know. He told me. I apologize, Your Honor. I don't know that as a fact. At the time he wrote the letter, he told me that he did not have knowledge that they were infringing his patent. What does that even mean? He's not a patent lawyer, so he can't make a definitive judgment, but he thinks they infringed? I mean, how does this help us? I don't think it does, and I think this needs to be, you need to judge this from an objective standpoint, and I think here objectively looking at these letters, there's no assertion of rights on the patent. There is no accusing. Then why are you asking them, why are you saying, we'll assume you don't have anything to say about the merits of the patent or its relevance to your blade server products. I don't see what the point of that language could be but a veiled threat. Well, if you look at the letter and who it's addressed to, it's addressed to the general counsel of HP, or I guess it was the original letter was addressed to the general counsel. The second letter came back from, I believe, somebody in the patent group, and then Mr. Ramey responded to that letter. The letter was addressed that way because you're dealing with a patent, a legal instrument sent to the general counsel. Now, those aren't technical people necessarily, and so an identification of what the patent would relate to might be necessary, like you brought up to Ms. Morrow just a few minutes ago. And HP is an enormous company. Blade server products, even that product line is quite large in itself. Let me ask you a semi-hypothetical question. I would say that after getting this letter, HP looks at it and thinks, oh, my goodness, we're infringing, or we may infringe, or more likely than not some jury would decide we're infringing. So they know that. Does that change anything? I don't think that changes anything, Your Honor. I don't think the subjective belief of the person receiving the letter or the subjective intent of the person sending the letter should be in the test at all. It makes the test entirely too gray. I'd like to address Ms. Morrow's points with regard to What color do you think it is now? I'm sorry? What color do you think it is now? If that test would make it too gray, how would you describe the color that the current practice leaves it in with all these cleverly worded letters back and forth where everybody's dancing around the obvious reality of the situation? How objective is that? How predictable is that? Isn't that at least as gray? It is gray, Your Honor. If there's going to be any bright line rule, I think there needs to be an assertion of right and a suggestion that the D.J. plaintiff is violating that right. There at least needs to be that. And we don't have that here. So suppose the D.J. plaintiff writes a letter in response and says, we're not infringing. You say we're infringing. We're not infringing. And then races to the courthouse. Would that change anything? I don't think it would. Violating, infringing, even though it hasn't been explicitly in that word charged. I think in this circumstance, Your Honor, that would not change anything. Because there has been no assertion of rights by Acceleron against a particular action by HP. I think HP's actions now, I could have put, I think in Judge Bryson's concurrence in Sandisk, he suggested a, quote, put up or shut up letter. But they could have sent us a letter saying, tell us whether or not we infringe. And I think in that instance, we would be forced to actually perform a Rule 11 investigation, let them know whether or not they infringe or tell them we're not going to answer their letter. And I think under those circumstances, there may be an implicit assertion of rights. But that's not what HP did. They didn't send us that type of letter. Do you think that metamine changed anything at all in this kind of relationship as opposed to the specific facts of that case? I think it changed the test. I can envision circumstances where the factors may be the same, but the tests applied can be different. Like, for example, I don't know, a criminal defendant may be held not guilty under a beyond a reasonable doubt standard. But in a subsequent civil case, based on that same activity, using the same factors under preponderance of the evidence standard, he may be found liable. You're saying it changed the test, but this still doesn't pass the test. Is that what you're saying? Yes, yes, Your Honor. What's the new test in a sentence? In a sentence? Excluding licensees. Obviously, the holding of metamine is licensees automatically have standing, period. For everybody who isn't a licensee, what's the new test? I think the new test is whether under all the circumstances, whether there's a substantial controversy. All the circumstances doesn't help. Of course you have to look at all the circumstances that are relevant. That goes without saying. So what's the test? Whether there's a substantial controversy between parties. What does that mean, substantial controversy? A controversy, in fact, of immediate and concrete nature as opposed to just a speculative controversy like we had here. What's speculative about this controversy? Well, there's nothing speculative about it anymore. But at the time when HP filed the complaint, it was purely speculative. All we did was notify them of the 021 patent. We mentioned a product line, not even a specific product, but we never asserted the rights of the 021 patent against that particular product or the product line. It's HP that took a hypersensitive view and rushed to the courthouse. Why should the patentee be required to assert the rights of its patent? That's the reason people have patents, because it conveys the right to exclude. There's no point in having a patent unless you're going to assert it. The patentees, there's all sorts of avenues outside of litigation, of business reasons that a patentee might want to communicate with another company. Like I mentioned, you might want to sell the particular patent or portfolio or enter into a joint development agreement or a joint agreement. None of that is impeded. I think it may be impeded if we adopt a bright-line rule that just merely identifying a patent and identifying some product or product line in discussions is enough for a declaratory judgment action. If two parties got in a room together and I said, hey, you might want to incorporate the technology in my patent into your products, they say, which products? I say, well, your computers or your desktop computers. All of a sudden, I'm subject to a declaratory judgment jurisdiction, even though I'm not really asserting rights. My entire motivation is just to talk to somebody about my patent rights and some sort of business deal we could work out. Some sort of business deal other than a license for money? The fiction here is really a heavy burden. All right. Well, I think we've got your case very clearly in mind. Ms. Morrow, you've got two minutes of rebuttal. Thank you, Mr. Cook. Thank you. Thank you, Your Honor. Further to the court's question on MedImmune, the concern that the court expressed was that the dispute needed to be sufficiently crystallized that the district court wouldn't be ruling on something that was merely a hypothetical dispute. And so in these circumstances, obviously you wouldn't want the district court to be ruling on products that weren't about to be released, but here we have products that were actually released and on the market. You wouldn't want the court ruling on a patent that had never been raised by the patent holder because maybe the patent holder would never assert it. But here we have a situation where the patent holder has reached out and indicated that it thinks the patent is relevant to HP's ongoing business in a specific area. And so we would suggest that there's no risk here of the court ruling on a dispute that is not sufficiently crystallized that it would be a waste of judicial resources for the court to entertain the case. And that's the touchstone analysis for when there ought to be declaratory judgment jurisdiction. And we think that on the facts of this case, that's been satisfied. How many products are in this line? How many products are in this line? Well, there are essentially three different series of products, subsets of products within the server blades that are currently accused in the action. And so we're not talking about HP's entire server business or its entire computer business or anything like that. We are talking about a specific subset of the HP server business that was identified by the district court as under the general trademarks of the blade systems. So with regard to... Is the determinant here the level of specificity? I mean, Mr. Koch suggested, well, if they had named the claim and if they had named the exact product by model number, presumably, that might have been enough. He didn't say it was, but it might have been enough. But failing that, since there was no specific product name and there was no specific claim asserted and there were no claims charged, that mapped the claim limitations of claim one against the different features of the product, that it's all too vague in general and therefore no DHA jurisdiction. Do you agree that the level of specificity is the right measure? I think while the court is searching for a bright line, there may not be a bright line here. I'm searching for anything. I'll settle for anything. I'm not holding out for a bright line. I'll settle for anything better than the vague language of metamere. Well, I think that the Sandisk panel gave it a fair shot of indicating that there was specific business activity that had been identified as being at issue and we think we have that specific business activity. You could envision other circumstances where you said, I have a patent relating to a pump and the defendant makes a million different products that incorporate pumps and you wouldn't know which one that was. But that's not the circumstance that we have here. They said it's relevant to your blade servers, Cap B blade, Cap S servers, and that is a specific subset of the products here. So we think that that aspect of the articulation by Sandisk of a rule is something that we, you know, is a rule that is easy for parties to apply and is something that has been met in this instance. Do you think the insurance company cases that the Supreme Court relied on have any relevance to the patent infringement licensing type of circumstance? To the extent that in one of those cases there was a policy and an insured, there had been no demand or threat of suit by the insured against the policyholder. I don't know what the facts are, but I'm asking you whether you think they bear on a case like the one before us today. I do by analogy because in that instance, the Supreme Court thought there was jurisdiction even though there had been no threat of suit on that policy at that point because there was still underlying litigation to be resolved. And so the court was looking... The policy is sort of like a patent license. It's a very specific legal instrument drawn carefully with a certain amount of provision, mutual rights and obligations. In the Acceleron HP circumstance, we don't have any legal instrument that the two parties have agreed to be bound by. We have something issued by the patent office on the one hand and commercial sales on the other hand. Right. And I would suggest there does need to be some linking of the two, but the linking of the two would be some affirmative act by the patent holder indicating that it tends to assert this patent against other parties and that it's identifying particular activity as being of interest, thus flagging the fact that there is a belief that HP may need rights under this patent and triggering on HP's part the opportunity to analyze that and determine whether that's a problem. All right. I think the issues are well framed. We thank you both and we'll take the appeal on your advisement. Thank you, Your Honor.